IN THE MATTER OF THE JUDICIAL SETTLEMENT OF THE ACCOUNTS OF SAMUEL D. BABCOCK, GEORGE F. DE FOREST AND DANIEL LORD, EXECUTORS OF CHRISTIAN E. DETMOLD.

*Duty of executors to pay taxes, under an assessment levied upon the testator's real estate and made during his life, from principal.*

Christian E. Detmold died in the city of New York on July 2, 1887, leaving a will which was shortly thereafter admitted to probate. By this will the testator, after making some bequests, devised, subject to an annuity to his wife, all his estate to two daughters, who were infants, for life, with the remainder to their issue.

On June 29, 1887, three days prior to the testator's death, the commissioners of taxes and assessment certified the assessment-rolls of the real and personal estate in the city of New York for the year 1887, and delivered the same before the first Monday of July to the board of aldermen, on which rolls the premises, Nos. 557 and 559 Broadway, New York city, were assessed to the testator, as owner, at a valuation of $250,000; the amount of taxes imposed being the sum of $5,400.

On an appeal from an order of the Surrogate's Court of the county of New York, adjudging that such taxes were payable out of the income and not from the principal of the estate:

*Held,* that as the assessment-rolls had been completed and delivered prior to the death of the testator, there was a personal liability upon the part of the testator to pay the taxes because he was the owner of the property at the time the assessment-roll was made out.

That the amount of the taxes was a debt, and that the executors were bound to pay it out of his estate and could not charge it against any of the devisees.

APPEAL from an order of a Surrogate's Court of the county of New York, entered in the office of the clerk of the surrogate on December 14, 1888, which directed the payment of the taxes for the year 1887 on certain real estate of the testator, Christian E. Detmold, out of the income and not out of the capital of the testator's estate.

*Charles E. Miller*, for the executors, appellants.

*James W. Perry*, special guardian for infant remaindermen, the respondents.

VAN BRUNT, P. J.:

The testator died in the city of New York on the 2d of July, 1887. His will was shortly thereafter admitted to probate and the executors duly qualified. By the provisions of his will, the decedent, after some bequests, devised, subject to an annuity to his wife, all his estate to his two daughters for life, with remainder to their issue. The remaindermen are infants and are represented by their special guardian appointed by the surrogate. The executors in the account of their proceedings charged the annual taxes for the year 1887 against the capital or *corpus* of the estate, and hence, in effect, against the parties in remainder. The special guardian objected to this charge on behalf of the remaindermen, claiming that the tax should be borne by the life tenants and paid out of the income. A state-ment of facts was agreed upon and a hearing before the surrogate had thereon. This statement shows that on the 29th of June, 1887, three days prior to testator's death, the commissioners of taxes and assessments certified the assessment-rolls of the real and personal estate of this city for the year 1887, and delivered the same before the first Monday of July to the board of aldermen. The premises Nos. 557 and 559 Broadway were assessed on such rolls to the tes-tator, as owner, at a valuation of $250,000, of which premises he was, up to the time of his death, the actual owner. The amount of the tax for the year 1887 was imposed at the sum of $5,400. On the hearing before the surrogate the objection of the special guardian, that the charge by the executors of this annual tax to the capital of the estate was improper, was sustained. The surrogate held that the tax must be charged against the income and be borne by the tenants for life. An order was entered in accordance with such decision, and from such order this appeal is taken.

There is no question but that the annual charges and taxes imposed on property must always be borne by the life tenants upon the theory that each estate must bear its own burdens. But upon an examination of the facts in this case it appears that this rule is entirely inapplicable for the reason that the *corpus* of an estate must

bear the burdens of its debts, and at the time of the testator's death he had become personally liable for the payment of this tax entirely independent of the question as to whether it was or was not a lien upon the real estate. And it is here that we think the learned surrogate has overlooked the fact that the liability of the testator to pay this tax does not depend upon any special statutory provision in respect to the payment of taxes levied against the estates of decedents, but rests upon the broad principle that the testator's estate is liable for the payment of his debts. Therefore, if this tax, at the time of his death, was a liability against him, his estate was bound to pay it, and it could not be charged against the life tenant. In fact, it appears that the testator did not die until half the year 1887 had passed. The tax was for the whole year, and there does not seem to be any justice in charging the life tenant with a tax for the whole when they get only the income for the half, unless we are required to do so on principles, the authority of which should not be interfered with. But it seems to us that the question is not open to discussion. In the case of *Rundell* v. *Lakey* (40 N. Y., 513), it was distinctly held that the owner was legally liable to pay a tax which was in precisely the same condition as the one at bar. In the case cited the action was brought to recover the amount of a certain tax assessed against the defendants, and paid by the plaintiff at the request of the defendants, under an agreement that they would refund the amount to him in case they "were legally liable to pay it." On September 1, 1860, the defendants sold and conveyed to the plaintiff by deed, with the usual covenants for peaceable and quiet possession, a farm in the town of Manchester, and the plaintiff took possession. The county and State taxes for that year had been assessed to the defendants. The assessment-rolls were completed before August first; the annual meeting of the supervisors was held in November, when the tax in question was extended upon the rolls, and became a lien upon the real estate. On the 14th of February, 1861, the plaintiff paid the tax upon the agreement stated, and it was held that the vendee could maintain an action against the vendors upon the agreement, and also that there was a personal liability of the defendants for the payment of the tax, and that after the completion and delivery of the assessment-roll, there was no power to alter or change it. This case established the personal liability of the

defendants for the payment of the tax, because they were the owners of the property in question at the time the assessment-roll was made out. But it is claimed that this case is no authority in respect to the question in the case at bar, because the controversy was over the rights of vendors and vendees, while in the case under consideration as between life tenants and remaindermen, the rights of the respective parties are different.

Our attention is called to the case of *Barlow* v. *St. Nicholas Bank* (65 N. Y., 399), where it was held that there was not a breach of the covenant against incumbrances unless the tax had been confirmed so as to be a lien upon the land prior to the execution of the deed; and that case was distinguished from the case of *Rundell* v. *Lakey*, in that the only point involved and decided was as to there being a breach of the covenant against incumbrances, whereas in the case of Rundell the question was whether the previous owner was legally liable to pay the tax. In the case at bar, the assessment-rolls had been completed and delivered prior to the death of the testator. There was, therefore, a personal liability upon the part of the testator to pay the tax, because he was the owner of the property at the time the assessment-roll was made out; and it being a debt, the executors were bound to pay it out of his estate, and could not charge it against any of the devisees, the distinction between the time at which the personal liability to pay the tax accrues and the time at which such tax becomes a lien upon the lands being very apparent.

We think, therefore, that the learned surrogate erred in charging this tax against the life tenant, but that the executors should have paid the tax, it being a debt for which the testator had become personally liable during his lifetime.

The order should be reversed, with ten dollars costs and disbursements, and the case remitted to the surrogate for further action.

Brady and Daniels, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and the case remitted to the surrogate for further action.